TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00608-CR






Cesilee Hyde, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0954132, HONORABLE JON N. WISSER, JUDGE PRESIDING






Around 2:00 a.m. on June 2, 1995, as she drove home following an evening spent drinking
with friends in several nightclubs, appellant Cesilee Hyde struck and killed Austin police officer Drew Bolin. 
The incident took place on Interstate 35, where Bolin was working at the scene of a traffic accident. 
Appellant's blood alcohol level was determined to be 0.16. A jury found appellant guilty of intoxication
manslaughter and assessed punishment at imprisonment for five years. See Tex. Penal Code Ann. § 49.08
(West 1994).

Appellant's brief contains five points of error, four of which assert that the district court
erred by overruling her motions to quash the indictment and to change venue, by granting the State's
challenge for cause to a venire member, and by instructing the jury on the law of good-conduct time and
parole. The State responds that appellant waived all but the last of these contentions by admitting her guilt
during her testimony at the punishment stage of trial, citing what is commonly called the "DeGarmo
doctrine." Correctly anticipating the State's position, appellant's first "point of error" argues that this
doctrine should not be applied in this cause. 

We agree with the State that appellant admitted her guilt at the punishment stage, but we
decline to apply the DeGarmo doctrine to the errors alleged by appellant. We will consider each of
appellant's points of error on its merits and, finding no reversible error, we will affirm.

Waiver


1. The DeGarmo doctrine

The Court of Criminal Appeals has long held that a defendant who testifies at the
punishment stage and admits her guilt of the offense for which she has been convicted waives any error that
might have occurred at the guilt stage of the trial. The court recently reaffirmed this waiver rule, writing:


Over the years we have developed a doctrine of waiver akin to the doctrine of
curative admissibility. Under this doctrine, error occurring at the guilt/innocence phase of
the trial is deemed to be waived if the defendant admits his guilt to the charged offense. 
For example, in Richardson v. State, 458 S.W.2d 665 (Tex. Cr. App. 1970), the
defendant voluntarily testified at the punishment phase of his trial, admitted the charged
offense of rape, and asked the jury for mercy. On appeal, the defendant contended the
trial court erred in denying his motion to suppress the in-court identification of the
prosecutrix and challenged the sufficiency of the evidence to support the conviction. We
held the defendant could not question the sufficiency of the evidence or the in-court
identification after voluntarily confessing.


. . . .


In DeGarmo v. State, 691 S.W.2d 657 (Tex. Cr. App. 1985), we again
addressed the issue of whether a defendant could challenge the sufficiency of the evidence,
on appeal, after admitting his guilt to the crime for which he has been convicted. At the
time of our consideration of DeGarmo, the parties agreed that if a defendant did not testify
at the guilt stage of the trial, but testified at the punishment stage of the trial, and admitted
his guilt, he had, for legal purposes, entered the equivalent of a plea of guilty. The
DeGarmo Court wrote:


 . . . The law as it presently exists is clear that such a defendant not only waives a
challenge to the sufficiency of the evidence, but he also waives any error that
might have occurred during the guilt stage of the trial.


Id., 691 S.W.2d at 661. The Court reaffirmed the doctrine of waiver and overruled
DeGarmo's challenge to the sufficiency of the evidence. . . .


Because of the infamy of the case, this concept of waiver has come to be known
as the DeGarmo doctrine. The DeGarmo doctrine has been described as a common-sense rule of procedure because the function of trial is to sift out the truth from a mass of
contradictory evidence. Stated another way, [t]he basic purpose of a trial is the
determination of truth. When the defendant testifies and judicially confesses to the charged
offense, the purpose of the trial process has been served--the truth has been determined
and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible
error should occur where the defendant has satisfied the necessity of the trial process.



McGlothlin v. State, 896 S.W.2d 183, 186-87 (Tex. Crim. App. 1995) (citations, footnotes, and
quotation marks omitted). In McGlothlin, the court invoked the DeGarmo doctrine to overrule the
defendant's contention that the trial court had erroneously admitted extraneous offense evidence during the
guilt stage of his trial. The court ruled that the defendant waived the error by admitting his guilt during his
punishment stage testimony. Id. at 189.

Appellant argues that the DeGarmo doctrine conflicts with the holdings in Burks v. United
States, 437 U.S. 1 (1978), and Greene v. Massey, 437 U.S. 19 (1978). This contention was considered
and rejected by the Court of Criminal Appeals in McGlothlin. 896 S.W.2d at 188. Appellant also
criticizes the DeGarmo doctrine because it does not "recognize" the constitutional and statutory safeguards
necessary for a knowing and voluntary admission of guilt. Appellant does not contend, however, that her
testimony was involuntary or that she did not understand all the consequences of her decision to testify.


2. Appellant's testimony

For the DeGarmo doctrine to apply, the defendant must unequivocally admit her guilt
during her punishment stage testimony. See McGlothlin, 896 S.W.2d at 188; Smyth v. State, 634
S.W.2d 721, 724 (Tex. Crim. App. 1982); Williams v. State, 930 S.W.2d 898, 900 (Tex.
App.--Houston [1st Dist.] 1996, pet. ref'd). Appellant contends her trial testimony did not constitute such
an unequivocal confession.

Appellant was questioned by defense counsel as follows:


Q Cesilee, before we go through the rest of the events of the evening, I want to ask you:
Do you accept the jury's verdict of guilty in this case?


A Yes, sir, I do.


Q When you had this accident, was your -- were your faculties impaired because of the
alcohol?


A Yes, sir. Looking back, yes, they were.


Q And did you cause Drew Bolin's death?


A Yes, sir, I did.


. . .


Q Okay. Also, do you dispute at this point the blood alcohol reading that the expert
testified to?


A I can't. No.



Later, during cross-examination, appellant was questioned by the prosecutor:




Q Do you admit that everything alleged in the indictment against you is true and correct?


A Yes, sir.



In response to her attorney's questions, appellant admitted all the elements of intoxication
manslaughter. See Penal Code § 49.08. Moreover, appellant confirmed during cross-examination that
all the allegations in the indictment were true. This alone constituted a judicial confession sufficient to sustain
her conviction. Dinnery v. State, 592 S.W.2d 343, 352 (Tex. Crim. App. 1980) (opin. on reh'g). 
Because appellant unambiguously confessed her guilt during her punishment stage testimony, she waived
any error to which the DeGarmo doctrine applies.


3. Application of DeGarmo in this cause

The State contends that by confessing her guilt during her punishment stage testimony,
appellant waived her right to complain of any prior error, including the overruling of her motions to quash
the indictment and to change venue and the granting of the State's challenge for cause to a venire member. 
Appellant responds that, to date, the DeGarmo doctrine has been applied only to challenges to the legal
sufficiency of the evidence and to questions regarding the admissibility of evidence at the guilt stage. See
McGlothlin, 896 S.W.2d at 186-87 (collecting cases). She argues that the doctrine should not be
extended to pretrial errors or to errors during jury selection. Another court of appeals has refused to apply
DeGarmo to jury selection error. See Post v. State, 936 S.W.2d 343, 348 (Tex. App.--Fort Worth
1996, pet. ref'd).

In DeGarmo, the court wrote that a defendant who admits guilt at the punishment stage
"has, for legal purposes, entered the equivalent of a plea of guilty." 691 S.W.2d at 661. A plea of guilty
waives all nonjurisdictional defects occurring prior to entry of the plea. Jack v. State, 871 S.W.2d 741,
743 (Tex. Crim. App. 1994). In McGlothlin, however, the court described the DeGarmo doctrine as
"a doctrine of waiver akin to the doctrine of curative admissibility." 896 S.W.2d at 186. Under the
doctrine of curative admissibility, a defendant who offers the same evidence to which he earlier objected
waives any error regarding the admission of the evidence. Maynard v. State, 685 S.W.2d 60, 65 (Tex.
Crim. App. 1985). By analogizing the DeGarmo doctrine to the doctrine of curative admissibility,
McGlothlin supports appellant's argument that DeGarmo applies only to errors in the admission of
evidence.

Further support for appellant's position is found in McGlothlin's stated justification for the
DeGarmo doctrine: "When the defendant testifies and judicially confesses to the charged offense . . . the
truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No
reversible error should occur where the defendant had satisfied the necessity of the trial process." 896
S.W.2d at 187 (footnote omitted). In effect, the defendant's testimonial confession moots any errors that
might have contributed to the finding of guilt. This suggests that a defendant's admission of guilt at the
punishment stage waives only those errors relevant to the determination of guilt. 

The State argues that appellant waived her contention that the district court erroneously
granted the State's challenge for cause to a venire member. The challenge was based on the panelist's
inability to consider the full range of punishment for the charged offense. The Court of Criminal Appeals
recently held that voir dire error regarding a subject that a jury would consider only during the punishment
phase of a trial is error affecting punishment only, and reversal for such error entitles the defendant to a new
trial as to punishment only. Ransom v. State, 920 S.W.2d 288, 298 (Tex. Crim. App. 1996) (opin. on
reh'g); see Tex. Code Crim. Proc. Ann. art. 44.29(b), (c) (West Supp. 1998). The DeGarmo doctrine
does not apply to punishment phase errors. McGlothlin, 896 S.W.2d at 188. Since appellant's alleged
jury selection error is relevant only to punishment, appellant's admission of guilt during her punishment
testimony cannot be said to have cured the error. See Post, 936 S.W.2d at 348.

The State also argues that appellant's trial testimony waived her point of error complaining
of the overruling of her pretrial motion to change venue. Like the jury selection issue, the alleged venue
error is relevant to punishment because the right to a trial free of unfair prejudice logically extends both to
the adjudication of guilt and to the determination of punishment. While an admission of guilt at the
punishment stage may put to rest any question whether the failure to change venue resulted in an unfair
conviction, it does not moot the question whether the jury's punishment determination was unfairly
influenced by local prejudice. 

Finally, the State urges that appellant's trial testimony waived her point of error complaining
of the overruling of her motion to quash the indictment. The purpose of a motion to quash is to give the
accused fair notice of the accusation against which she will have to defend. State v. Carter, 810 S.W.2d
197, 199 (Tex. Crim. App. 1991). This is an interest unique to the guilt stage of trial. Thus, applying the
reasoning of McGlothlin, appellant's admission of guilt "satisfied the necessity of the trial process" with
respect to the motion to quash. But because the Court of Criminal Appeals has never applied the
DeGarmo waiver doctrine to a pretrial ruling, we will, in an abundance of caution, also address the merits
of this point of error. 

For the reasons stated, we decline to hold that appellant waived her points of error by
admitting her guilt during her punishment stage testimony. We now turn to the merits of appellant's
contentions. 


Points of error


1. Motion to quash

Count one of the indictment in this cause contains two paragraphs. Both counts allege the
offense of intoxication manslaughter using language that tracks Penal Code section 49.08, with the only
difference between them being the definitions of intoxication on which they rely. See Tex. Penal Code Ann.
§ 49.01(2)(A), (B) (West 1994). (1) Appellant moved to quash both paragraphs because they did not allege
a culpable mental state. Section 49.08 does not expressly require a culpable mental state, but appellant
argues that one was required by Penal Code section 6.02(b). Tex. Penal Code Ann. § 6.02(b) (West
1994). Under section 6.02(b), if the definition of an offense does not prescribe a culpable mental state,
a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental
element. Section 49.11, which expressly dispenses with any mental element for chapter 49 offenses, was
not in effect when this offense occurred. See Tex. Penal Code Ann. § 49.11 (West Supp. 1998).

Former section 19.05(a)(2), the statutory predecessor to current section 49.08, also did
not prescribe a culpable mental state. See Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex.
Gen. Laws 1698. Section 6.02(b) notwithstanding, the Court of Criminal Appeals held that no culpable
mental state was required for the offense of involuntary manslaughter under section 19.05(a)(2) because
intoxication was an essential element of the offense. Hardie v. State, 588 S.W.2d 936, 938 (Tex. Crim.
App. 1979). The court relied on its earlier holding in Ross v. State, 522 S.W.2d 214 (Tex. Crim. App.
1975), that no culpable mental state was required for the offense of driving while intoxicated.

We recently followed the holding in Ross in a prosecution for driving while intoxicated
under section 49.04. See Sanders v. State, 936 S.W.2d 436, 438 (Tex. App.--Austin 1997, pet. ref'd);
see also Tex. Penal Code Ann. § 49.04(a) (West Supp. 1998). Given the Hardie court's reliance on
Ross, and for the reasons stated in Sanders, we conclude that Hardie is dispositive of appellant's
contention. Proof of a culpable mental state was not required in this prosecution under section 49.08 for
intoxication manslaughter, even though the offense arose before the effective date of section 49.11. The
district court did not err by overruling the motion to quash. Point of error five is overruled.


2. Motion to change venue

Appellant contends the district court erred by refusing to order a change of venue. 
Appellant's original motion to change venue alleged that extensive coverage of this offense in the news
media had created so great a prejudice against her that she could not obtain a fair and impartial trial in
Travis County. See Tex. Code Crim. Proc. Ann. art. 31.03(a)(1) (West 1989). The motion also alleged
that a group of influential individuals and organizations was engaged in a campaign to deny her a fair trial. 
See art. 31.03(a)(2). The motion was supported by the affidavits of two residents of Travis County. The
State filed eight affidavits controverting the motion. See art. 31.04. Appellant later filed a supplemental
change of venue motion complaining that the State had deliberately leaked information to the press for the
purpose of prejudicing appellant's defense. The supplemental motion was not supported by affidavit. 
These motions were overruled by the district court following a hearing. Appellant subsequently filed two
more supplemental motions repeating the allegations previously made. The second supplemental motion,
which also was not supported by affidavit, was overruled by the court without a hearing. The third
supplemental motion, which was supported by affidavit, was filed four days before trial began and was not
ruled on by the court.

A defendant seeking a change of venue bears a heavy burden to prove the existence of
such prejudice in the community that the likelihood of obtaining a fair and impartial trial is doubtful. 
McGinn v. State, 961 S.W.2d 161, 163 (Tex. Crim. App. 1998); Drone v. State, 906 S.W.2d 608, 618
(Tex. App.--Austin 1995, pet. ref'd). A motion for change of venue is addressed to the discretion of the
trial court and an appellate court may reverse only for an abuse of discretion. McGinn, 961 S.W.2d at
163; Drone, 906 S.W.2d at 618. The trial court's decision will not be disturbed on appeal so long as it
is within the realm of reasonableness given the record that was before it. Narvaiz v. State, 840 S.W.2d
415, 428 (Tex. Crim. App. 1992); Drone, 906 S.W.2d at 618.

The appellate record does not contain the hearing on appellant's motion to change venue. 
See former Tex. R. App. P. 50(d) (in effect when the record was filed). We have reviewed the affidavits
filed by appellant and the State. Appellant's affiants stated that there was such a prejudice against appellant
in Travis County that she could not receive a fair trial; the State's affiants disputed this. Appellant's affiants
did not confirm her allegation of a dangerous combination against her; the State's affiants denied that such
a combination existed. Given this record, it cannot be said that the district court abused its discretion by
overruling the motion for change of venue. Point of error three is overruled.


3. State's challenge to venire member

Appellant contends the district court erred by granting the State's challenge to venire
member number thirty, Lupe Anguiano, on the ground that she was biased against a phase of the law on
which the State was entitled to rely. See Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (West Supp. 1998). 
During the State's voir dire of the jury panel, Anguiano made no comment when the prosecutor discussed
the range of punishment for intoxication manslaughter. But when the subject of probation came up during
defense counsel's voir dire, Anguiano said, "I can relate to this case some because I would never be able
to punish penitentiary because of the fact that I believe in rehab and probation, and probation is not an easy
time. It is a sentence, you know." She explained that her opinion was based on her son's experience
following a conviction for driving while intoxicated, for which he apparently was assessed a probated
sentence. She added, "I'm much for rehab because penitentiary would not do anything for a young
person."

Anguiano was later questioned individually by the prosecutor:


[Prosecutor]: Hi. I'm sorry, Ms. Anguiano. You said that you could never give
penitentiary time in this type of case?


Ms. Anguiano: I don't believe I could.


[Prosecutor]: Okay. Do you think that you could ever assess the maximum punishment
in a case like this, which is 20 years in prison?


Ms. Anguiano: No, I don't think so.


[Prosecutor]: Under any set of circumstances?


Ms. Anguiano: Not in a case like this. I don't think I could.



Defense counsel immediately sought to rehabilitate the panelist. He told her "to take [appellant's] age out
of consideration" and to "[a]ssume that it's not a young person." He then asked if she could "envision a
set of circumstances where you would send a person my age to the penitentiary for 20 years for this type
of offense. I'm 43." Anguiano replied, "Being that liquor was the one that cause this accident, I feel that
still -- go for the rehab . . . ." The court then questioned the panelist: 


The Court: You could not consider 20 years for this offense?


Ms. Anguiano: No. Maybe if he had been a repeat offender, then I would consider
sometime like 15 years or something.


The Court: What about 20 years?


[Defense counsel]: Especially if he had no remorse.


Ms. Anguiano: Twenty years. If he didn't have any remorse, then maybe I would
consider after hearing all the facts.


The Court: State want to ask her any questions?


[Prosecutor]: . . . This is the last time we'll get a chance to talk to you and I've heard you
kind of, you know, say a couple of different things. And really you're the only one who
knows whether you personally can really ever sentence someone to 20 years in prison for
an unintentional crime that was caused by accident, okay?


That's the bottom line, because that's what the law is and that's what the law will require
you to be able to do if you serve as a juror in this case. Now, you're the only one that
knows. You have to look inside, and there's no right or wrong answer. If you can't do
it, that's fine.


Ms. Anguiano: I don't think I can do it.



At this point, the State challenged Anguiano for cause. The challenge was sustained.

A venire member who cannot consider the full range of punishment is properly
challengeable for cause by the State. Narvaiz v. State, 840 S.W.2d 415, 427 (Tex. Crim. App. 1992). 
Appellant argues that while Anguiano indicated she generally would not impose the maximum punishment
for intoxication manslaughter, she was shown to be willing to assess the maximum punishment in an
appropriate case. Thus, appellant contends Anguiano was not biased against the law and the court abused
its discretion by granting the State's challenge for cause.

In reviewing challenges for cause, an appellate court may not disturb the decision of the
trial court absent a showing of an abuse of discretion. Satterwhite v. State, 858 S.W.2d 412, 415 (Tex.
Crim. App. 1993). An appellate court reviews a cold record while the trial court had the opportunity to
view the panelist's demeanor and determine her credibility. For this reason, an appellate court must
examine the record as a whole to determine whether there is support for the trial court's decision, and the
trial court's ruling must be afforded great deference. Id. If a venire member equivocates on her ability to
follow the law, the reviewing court must defer to the trial court's judgment. Brown v. State, 913 S.W.2d
577, 580 (Tex. Crim. App. 1996).

Considering the totality of Anguiano's remarks, her attitude with respect to the proper
punishment for intoxication manslaughter was reasonably clear. She favored probation in such cases and
was definitely opposed to a maximum term of imprisonment. Although she once conceded that she might
consider the maximum term in an appropriate case, she immediately contradicted herself and reaffirmed
that she would be unable to consider imprisonment for twenty years. The district court did not abuse its
discretion by granting the State's challenge. Point of error four is overruled.


4. Jury instruction regarding parole and good-conduct time

To understand appellant's last point of error, it is important to note that the jury, as part
of its verdict at the guilt stage, found that appellant used a deadly weapon during the commission of the
offense. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 1998). As a consequence,
appellant will not become eligible for parole until her actual calendar time served, without consideration of
good-conduct time, equals one-half her sentence. See Act of May 27, 1995, 74th Leg., R.S., ch. 260,
§ 17, 1995 Tex. Gen. Laws. 2207, 4276 (Tex. Code Crim. Proc. Ann. art. 42.18, § 8(b)(3), since
repealed and codified at Tex. Gov't Code Ann. § 508.145(d)). Further, she will not be eligible for release
to mandatory supervision. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 6.02, 1993 Tex. Gen.
Laws. 3586, 3761 (Tex. Code Crim. Proc. Ann. art. 42.18, § 8(c), since repealed and codified at Tex.
Gov't Code Ann. § 508.149(a)(1)). Thus, the award of good-conduct time while in prison will not hasten
appellant's eligibility for parole (because good-conduct time cannot be considered) or her release to
mandatory supervision (because she is not eligible for such release). 

The district court's jury charge at the punishment stage included the mandatory statutory
instruction on good-conduct time and parole. Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp.
1998). In pertinent part, this instruction told the jury:


Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the award of
good conduct time. . . .


It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.


Under the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, she will not become eligible for parole until the actual time served equals
one-half of the sentence imposed or 10 years, whichever is less, without consideration of
any good conduct time. . . .[ (2)] Eligibility for parole does not guarantee that parole will be
granted.


It cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if she is sentenced to imprisonment, because the application
of these laws will depend upon decisions made by prison and parole authorities.


You may consider the existence of the parole law and good conduct time. 
However, you are not to consider the extent to which good conduct time may be awarded
to or forfeited by this particular defendant. You are not to consider the manner in which
the parole law may be applied to this particular defendant.



Appellant objected to the statutory instruction on the ground that "it just flat misstates the law" with respect
to good-conduct time. Appellant asked that all references to good-conduct time be stricken from the
statutory instruction "since under the law good conduct time cannot possibly affect this defendant's
sentence, and it gives the jury a consideration that they shouldn't have at this time." The court overruled
the objection, but added an additional paragraph to the charge immediately following the statutory
instruction: 


Under the law applicable to this case if the defendant is sentenced to a term of
imprisonment she can only be released on parole or when the sentence is served in its
entirety. She will not be entitled to good time credit.



Appellant stated that she had no objection to the additional paragraph, but reaffirmed her objection to the
statutory instruction.

Appellant now contends that she was denied due process and due course of law because
"the instruction raised issues which were not appropriate for jury consideration -- good conduct time and
parole. Under the law applicable to appellant's case, she was not entitled to good conduct time, so no such
instruction should have been given by the court . . . ." Appellant adds that "the instruction insinuates that
somehow appellant may be eligible for parole and good conduct time . . . . This was wrong." See U.S.
Const. amends. V, XIV; Tex. Const. art. I, § 19.

Appellant's argument that she will not be eligible for parole is incorrect. She will become
eligible for parole when she has served one-half of her sentence. If appellant means to argue that she will
not be eligible for mandatory supervision, the statutory instruction does not mention that subject and cannot
be labeled misleading in that regard.

The statutory instruction on good-conduct time and parole has been upheld against due
course of law and due process of law challenges. See Oakley v. State, 830 S.W.2d 107, 111-12 (Tex.
Crim. App. 1992); Muhammad v. State, 830 S.W.2d 953, 956 (Tex. Crim. App. 1992). Considering
the instructions given as a whole, we are not persuaded to reach a different conclusion in this cause. The
jury first was told, in accordance with article 37.07, section 4(a), that appellant may earn time off the
period of incarceration imposed through the award of good-conduct time. The instruction correctly
described the calculation of appellant's parole eligibility, and specifically informed the jury that good-conduct time would not be considered in that calculation. The jury was warned that the award of good-conduct time cannot be predicted and was told not to consider the extent to which good-conduct time
might be awarded to appellant. Finally, in the supplemental instruction, the court attempted to answer
appellant's objection to the statutory instruction by telling the jury that appellant would not receive good-conduct time credit. The instructions given did not misstate the law of good-conduct time and parole. 

Even if the instructions fostered confusion with regard to good-conduct time, there was no
harm. Neither good-conduct time nor parole was mentioned during counsel's punishment arguments. 
There is no evidence the jury was confused about these subjects. No motion for new trial was filed and
nothing in the record suggests that the jury discussed, considered, or tried to apply good-conduct time or
the parole law in assessing punishment. In the absence of evidence to the contrary, we must assume the
jury read and followed the instructions as given. See Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim.
App. 1996). We are satisfied beyond a reasonable doubt that any error in the court's instructions regarding
good-conduct time and parole did not contribute to the punishment assessed by the jury. Tex. R. App. P.
44.2(a). Point of error two is overruled.

The judgment of conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd, and Dally*

Affirmed

Filed: May 14, 1998

Publish


















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).

1. A second count alleging the offense of manslaughter was abandoned by the State. See Tex. Penal
Code Ann. § 19.04 (West 1994).
2. The court modified the statutory charge with regard to the calculation of parole eligibility to take into
account the twenty-year maximum term of imprisonment for second degree felonies. Appellant does not
complain of this.


"BR2">

Appellant stated that she had no objection to the additional paragraph, but reaffirmed her objection to the
statutory instruction.

Appellant now contends that she was denied due process and due course of law because
"the instruction raised issues which were not appropriate for jury consideration -- good conduct time and
parole. Under the law applicable to appellant's case, she was not entitled to good conduct time, so no such
instruction should have been given by the court . . . ." Appellant adds that "the instruction insinuates that
somehow appellant may be eligible for parole and good conduct time . . . . This was wrong." See U.S.
Const. amends. V, XIV; Tex. Const. art. I, § 19.

Appellant's argument that she will not be eligible for parole is incorrect. She will become
eligible for parole when she has served one-half of her sentence. If appellant means to argue that she will
not be eligible for mandatory supervision, the statutory instruction does not mention that subject and cannot
be labeled misleading in that regard.

The statutory instruction on good-conduct time and parole has been upheld against due
course of law and due process of law challenges. See Oakley v. State, 830 S.W.2d 107, 111-12 (Tex.
Crim. App. 1992); Muhammad v. State, 830 S.W.2d 953, 956 (Tex. Crim. App. 1992). Considering
the instructions given as a whole, we are not persuaded to reach a different conclusion in this cause. The
jury first was told, in accordance with article 37.07, section 4(a), that appellant may earn time off the
period of incarceration imposed through the award of good-conduct time. The instruction correctly
described the calculation of appellant's parole eligibility, and specifically informed the jury that good-conduct time would not be considered in that calculation. The jury was warned that the award of good-conduct time cannot be predicted and was told not to consider the extent to which good-conduct time
might be awarded to appellant. Finally, in the supplemental instruction, the court attempted to answer
appellant's objection to the statutory instruction by telling the jury that appellant would not receive good-conduct time credit. The instructions given did not misstate the law of good-conduct time and parole. 

Even if the instructions fostered confusion with regard to good-conduct time, there was no
harm. Neither good-conduct time nor parole was mentioned during counsel's punishment arguments. 
There is no evidence the jury was confused about these subjects. No motion for new trial was filed and
nothing in the record suggests that the jury discussed, considered, or tried to apply good-conduct time or
the parole law in assessing punishment. In the absence of evidence to the contrary, we must assume the
jury read and followed the instructions as given. See Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim.
App. 1996). We are satisfied beyond a reasonable doubt that any error in the court's instructions regarding
good-conduct time and parole did not contribute to the punishment assessed by the jury. Tex. R. App. P.
44.2(a). Point of error two is overruled.

The judgment of conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd, and Dally*

Affirmed

Filed: May 14, 1998

Publish